# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHRYN DEKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-2611 |
| v. ) | |
| ) | Judge Amy J. St. Eve |
| COUNTRYSIDE ASSOCIATION ) | |
| FOR PEOPLE WITH DISABILITIES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant, Countryside Association for People with Disabilities, Inc. has moved to dismiss Plaintiff's First Amended Complaint. The Court denies Defendant's motion.

## STATEMENT

On July 10, 2015, Plaintiff Kathryn Deka ("Deka") filed a six-count First Amended Complaint[1] alleging six claims of illegal employment action against Defendant Countryside Association for People with Disabilities, Inc ("Countryside"). Specifically, Deka alleges that Countryside terminated her employment on March 30, 2012 in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.*; the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1140; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

---

[1] Deka filed her initial Complaint on March 27, 2015. (R. 1.) On July 06, 2015, Deka filed a "Motion for Leave to File Plaintiff's First Amended Complaint Under Seal" after receiving her Notice of Right to Sue from the United States Equal Employment Opportunity Commission (EEOC). (R. 14.) On July 09, 2015, the Court granted Deka's motion for leave to file her First Amended Complaint (R. 18.) but, on July 10, 2015, denied her motion to file the amended complaint under seal. (R. 19.) On July 10, 2015, Deka filed the First Amended Complaint. (R. 20.)

§2000e, *et seq*. (R. 20 at 1, ¶1.)[2] For the following reasons, the Court denies Countryside's motion to dismiss.

## BACKGROUND

The Court takes the following relevant facts from Deka's First Amended Complaint (the "Complaint"). (R. 20.) In evaluating the motion to dismiss, the Court accepts as true the Complaint's well-pleaded factual allegations and draws all reasonable inferences in favor of Deka. *Stayart v. Yahoo!, Inc.*, 623 F.3d 436, 438 (7th Cir. 2010).

Countryside "provides supported employment, job training, home-based assistance and other programs and services for people with disabilities." (R. 20 at 1, ¶3.) It operates in Palatine, Illinois and Waukegan, Illinois. (*Id*. at 2, ¶3.) During all times relevant to the Complaint, Wayne Kulick ("Kulick") was Countryside's Executive Director, Howard Reicheneker ("Reicheneker"), its Chief Financial Officer, and Elizabeth Black ("Black"), its Human Resources Administrator. (*Id*.) Kathryn Deka "is a female who formerly worked for Defendant as the On-Site Director for its Palatine location." (*Id*. at 2, ¶4.) In this position, Deka's duties included, in part, "overseeing the programs at the Palatine location; determining the needs of Countryside's clients; supervising, evaluating, and training staff; ensuring compliance with accreditation standards and administrative regulations; developing budgets for Countryside's operations; and collaborating with outside agencies and organizations to address the needs of Countryside and its clients." (*Id*. at 2, ¶6.)

Deka "held [this position] for almost five years, from approximately July 9, 2007 through March 30, 2012." (*Id*. at 2, ¶4.) Countryside provided Deka with long-term disability coverage

---

[2] This Court has jurisdiction to hear the current case under 28 U.S.C. §1331, which "grants district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Evergreen Square of Cudahy v. Wis. Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015), quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id*.

and a group health insurance plan as employment benefits throughout her tenure. (*Id*. at 6, ¶¶38-39.) Deka was also "recognized . . . for her outstanding job performance." (*Id*. at 2, ¶7.) Specifically, she was commended for developing positive relationships with all of Countryside's referral sources, creating new bonds with other community members, significantly improving relationships with Countryside's major parent support groups, helping Countryside receive a three-year "Accreditation with Distinction," and operating Countryside at a surplus. (*Id*. at 2-3, ¶¶8-10.)

Over the course of various meetings and conversations, Deka witnessed Countryside's remarks regarding employee FMLA leave. On February 10, 2012, Deka observed a "visibly annoyed" Kulick refer to FMLA leave as a "get out of jail free card." (*Id*. at 3, ¶15.) Reicheneker and Black repeated the same statement, and Black added, "[y]eah, with a doctor's note, people can do whatever they want." (*Id*. at 3, ¶16.) Moreover, upon discussing an ill employee's termination, Kulick "dismissed" discrimination concerns, stating "[n]o one would ever think an agency like ours would discriminate. . . . Illinois is an employment at will state. We can do anything we want." (*Id*. at 3-4, ¶¶17-18.) The directors repeated statements such as this, and "[w]ho would suspect us?," at least five times between 2009 and March 30, 2012. (*Id*. at 4, ¶18.)

Eventually, Deka's multiple sclerosis caused her to seek FMLA medical leave from Countryside. Multiple sclerosis is "an inflammatory disease affecting the nervous system and causing a wide range of symptoms that may progress over time." (*Id*. at 4, ¶19.) Specifically, Deka's multiple sclerosis has caused her to experience extreme fatigue, difficulty concentrating, memory difficulties, and difficulty articulating thoughts and remembering information. (*Id*. at 4, ¶¶20, 23.) While working at Countryside, Deka used her employer-provided health insurance to

pay for doctors' appointments, other health care provider visits, medications, exams, and other services required as a result of her multiple sclerosis. (*Id*. at 7, ¶49.) "By 2012, it was necessary for Deka to miss whole or half days of work due to fatigue and other symptoms associated with MS." (*Id*. at 4, ¶24.)

On February 17, 2012, Deka emailed Black and requested an FMLA leave application. (*Id*. at 4, ¶25.) Before receiving a response from Countryside, Deka attended a Directors' Meeting on February 23, 2012 and heard Black refer to FMLA leave as getting "a get out of jail free card." (*Id*. at 5, ¶27.) Deka subsequently received an application from Countryside. Her doctor completed the application and submitted it to Countryside on February 27, 2012. (*Id*. at 5, ¶29.) Specifically, Deka requested a "job accommodation in the form of intermittent FMLA leave on an as-needed basis." (*Id*. at 5, ¶30.) The application notified Countryside that Deka was an "MS patient [who] experiences severe fatigue with flares or high stress situations . . . that is under treatment (Rx) to prevent flares." (*Id*. at 5, ¶31.) Specifically, Deka's doctor "estimated that the flare-ups would occur one time per six months, and last one to three days per episode." (*Id*. at 5, ¶32.) On March 1, 2012, Countryside notified Deka that it approved her FMLA application for leave as-needed. (*Id*. at 5, ¶34.) At that time, Deka notified Countryside that she completed the application to provide them with "notice of future FMLA-approved absences," stating, "I just need it in case I get sick. I'm not asking for time off right now." (*Id*. at 5-6, ¶34.)

Countryside continued to make remarks about FMLA leave until Deka's termination. On March 7, 2012, for example, Deka heard Black again refer to FMLA leave as "a get out of jail free card" at a Directors' Meeting. (*Id*. at 6, ¶35.) On March 30, 2012, at a managers' meeting, Deka witnessed Reicheneker make the same FMLA leave comment while looking at her and laughing. (*Id*. at 6, ¶36.)

4

Later the same day, on March 30, 2012, Countryside terminated Deka's employment before Deka utilized any FMLA intermittent leave. (*Id*. at 6, ¶37.) Subsequently, Countryside replaced Deka with a male employee after previously stating a desire to hire more males. (*Id*. at 8, ¶57.) Earlier in the year, Countryside considered firing the last hired employee to alleviate financial difficulties but, ultimately, declined to do so. Another employee inquired whether Countryside made that decision because the employee was a male, and Kulick replied, "yes, that's right." (*Id*. at 8, ¶¶59-60.)

On a few occasions, Countryside directors discussed the cost-effectiveness of only covering three to five "expensive illnesses" with the company's health insurance policy. (*Id*. at 6, ¶42.) Specifically, Kulick, Reicheneker, and Black would often comment about the costs of health insurance, "bitterly stat[ing] that, 'we have several people with expensive illnesses.'" (*Id*. at 6, ¶40.) On April 5, 2012, Deka attempted to pick up two multiple sclerosis medications from her pharmacy. The pharmacy informed her that Countryside had discontinued her health insurance on February 28, 2012, and Deka was unable to receive the medicine. (*Id*. at 7, ¶52.)

In her First Amended Complaint, Deka alleges six counts: 1) interference in violation of the FMLA; 2) retaliation in violation of the FMLA; 3) interference in violation of ERISA; 4) discrimination in violation of the ADA; 5) retaliation and interference in violation of the ADA; and 6) discrimination in violation of Title VII. (R. 20.) Countryside moves to dismiss Counts One and Two, predicated on the FMLA, as time-barred by the relevant statute of limitations. (R. 22 at 2.) Countryside additionally moves to dismiss all six counts for failing to "plausibly plead facts to support all of the elements" of each claim. (*Id.* at 1-2.)

ANALYSIS

I.     Timeliness of FMLA claims

Countryside argues that the relevant statute of limitations time-bars Counts One and Two. Thus, Countryside argues, the Court should dismiss Counts One and Two with prejudice.

A.     Legal Standard

"The period of limitations is an affirmative defense." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012), citing Fed. R. Civ. P. 8(c)(1). "[A]lthough a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). Specifically, "on the subject of the statute of limitations[,] . . . a complaint must plead . . . enough to show that the claim for relief is plausible." *Mitcheff*, 696 F.3d at 637.

Under FMLA Section 2617(c)(1), a complainant must normally bring an action based on retaliation or interference within a two year statute of limitations period. 29 U.S.C. §2617(c)(1). Section 2617(c)(2), however, "extends that limitations period to 3 years '[i]n the case of such action brought for a willful violation' of the statute." *White v. United Credit Union*, No. 11 C 4560, 2015 WL 3962009, at *4 (N.D. Ill. June 22, 2015), quoting 29 U.S.C. §2617(c)(2). This time limit initiates on the "date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. §2617(c)(2). Although the Seventh Circuit "has not ruled on the meaning of [a] 'willful violation' for FMLA purposes . . . most courts addressing the issue have ruled that the term has the same meaning under the FMLA as under the FLSA [Fair Labor Standards Act]." *White*, 2015 WL 3962009, at *4, citing *Bass v. Potter*, 522 F.3d 1098, 1103 (10th Cir. 2008) (noting the Tenth Circuit's agreement as to the FLSA with the First, Second,

Sixth, and Eighth Circuit Courts of Appeals). The Supreme Court has defined "willfulness" under the FLSA to mean "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).

B.     **The Complaint's Willfulness Claim is Plausible**

Deka's termination on March 30, 2012 was the last event constituting the alleged violation. Thus, Deka's FMLA claim accrued on March 30, 2012. *See* 29 U.S.C. §2617(c)(2). Deka filed the original complaint on March 27, 2015, outside of two years but within three years from her termination date. Given Deka's factual allegations described below, the Court finds her "willfulness" claim plausible and denies Countryside's motion to dismiss it as untimely.

The Complaint explicitly identifies Countryside's actions as a "[w]illful [v]iolation of the FMLA[.]" (R. 20 at 4, ¶25.) Furthermore, the Complaint alleges one and a half pages of facts from which the Court can reasonably infer such willfulness. On February 17, 2012, Deka "emailed Black asking for an application for FMLA leave." (*Id*.) By February 23, 2012, Countryside had not responded to Deka's FMLA application request, and Deka heard Black refer to the FMLA as "a get out of jail free card" at a Directors' Meeting. (*Id*. at 5, ¶¶26-27.) After receiving the FMLA application on February 27, 2012, Deka's doctor submitted it to Countryside. In it, Deka's doctor informed Countryside about Deka's illness, specific symptoms, and foreseeable need for work leave. On March 7, 2012, after Countryside approved Deka's FMLA request for intermittent leave, Deka again heard Black refer to FMLA leave as "a get out of jail free card." (*Id*. at 6, ¶35.) She also witnessed Countryside's directors discuss the cost-effectiveness of only covering three to five seriously ill employees. Finally, on March 30, 2012, Deka saw Black again refer to the FMLA as "a get out of jail free card" while looking at

7

her and laughing during a managers' meeting reviewing FMLA leave. (*Id*. at 6, ¶36.) Later that afternoon, Kulick, Reicheneker, and Black informed Deka that they were terminating her employment, effective immediately.

Accepting these factual allegations as true and drawing all reasonable inferences in favor of Deka, the Court finds the Complaint's willfulness allegation plausible, triggering the three year FMLA statute of limitations. *Stayart*, 623 F.3d at 438. Thus, the Complaint falls within the applicable statute of limitations, and the Court denies Countryside's motion to dismiss Counts One and Two based on the statute of limitations.

## II. Rule 12(b)(6)

Countryside next moves to dismiss all six counts in the Complaint for failing to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Thus, Countryside argues, the Court should dismiss the Complaint in its entirety. The Court will examine each count in turn.

### A. Legal Standard

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Put differently, a

8

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), quoting *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Importantly, Plaintiffs need not plead the elements of a prima facie case to survive a motion to dismiss. *See Twombly*, 550 U.S. at 569 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Childress v. Walker*, 787 F.3d 433, 440-41 (7th Cir. 2015) ("[A] plaintiff's complaint 'need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . . Specific facts are not necessary[.]'"), quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Rather, a complaint simply "must provide enough details about the subject matter of the case to present a story that holds together." *Mehta v. Beaconridge Improvement Ass'n*, 432 Fed. App'x. 614, 616 (7th Cir. 2011), citing *Erickson*, 551 U.S. at 93. The Court asks "whether the story could have happened, not whether it did." *Id.* (citations omitted). Ultimately, "[a] complaint that invokes a recognized legal theory . . . and contains plausible allegations on the material issues . . . cannot be dismissed under Rule 12." *Mitcheff*, 696 F.3d at 638, citing *Erickson*, 551 U.S. 89.

### B. FMLA Interference

Countryside first moves to dismiss Count One of the Complaint. Deka asserts Count One as a claim for interference in violation of the FMLA.

The "FMLA entitles an employee to twelve weeks of leave every twelve-month period if she is afflicted with a 'serious health condition' which renders her unable to perform her job."

*Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009), quoting 29 U.S.C. §2612(a)(1)(D). "Under the FMLA, it is 'unlawful for [an] employer to interfere with, restrain, or deny' an employee's 'exercise of or . . . attempt to exercise[] any right provided under' the Act." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015), citing 29 U.S.C. §2615(a)(1). Specifically, "[t]o prevail on an FMLA-interference theory, the plaintiff employee must prove that: '(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.'" *Pagel v. TIN, Inc.*, 695 F.3d 622, 627 (7th Cir. 2012), quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011).

In her Complaint, Deka alleges that while she was employed by Countryside, she suffered from multiple sclerosis. She also alleges that she gave notice to Countryside of her intent to take FMLA intermittent leave in February 2012, when she submitted an accommodation application detailing her serious health condition. Further, Deka asserts that Countryside acknowledged her physical and mental disabilities and agreed to grant her authorized intermittent leave. She maintains, however, that Countryside interfered and denied her FMLA benefits by terminating her employment before she utilized any FMLA leave. Based on these allegations, Deka has alleged sufficient facts to raise her right to relief above a speculative level and has put Countryside on fair notice of the claim and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555. Accordingly, the Court denies Countryside's motion to dismiss Count One of the Complaint.

The Court is not persuaded by Countryside's assertion that Deka's FMLA interference claim falls short because she "did not request leave under the FMLA." (R. 22 at 3.) Specifically,

10

Countryside argues that Deka is unable to assert FMLA protection, because she only asked for future intermittent leave without actually asking for leave on a particular date. This argument conflicts with the FMLA's language. "[T]he FMLA . . . clearly contemplates the scenario in which an employee requests leave beginning on a foreseeable future date[.]" *Reynolds v. Inter-Indus. Conference on Auto Collision Repair*, 594 F. Supp. 2d 925, 928 (N.D. Ill. 2009). Indeed the FMLA specifically states that, subject to notice requirements, "leave . . . may be taken intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. §2612(b)(1). Under these foreseeable circumstances, the employee "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave[.]" 29 U.S.C. §2612(e)(2)(B). "It is clear from the text and context of the notice clause . . . that Congress intended to help and protect employers by insuring adequate notice of extended absences by employees. It would be illogical to interpret the notice requirement in a way that requires employees to disclose requests for leave which would, in turn, expose them to retaliation, or interference, for which they have no remedy." *Reynolds*, 594 F. Supp. 2d at 928. Instead, "[l]ogic requires that the FMLA be read to require that that employee be permitted to make a charge against the employer for an adverse employment action." *Id*. Further, the FMLA protects employees when they "attempt" to exercise any rights under the Act. 29 U.S.C. §2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). It follows that Deka is not precluded from alleging FMLA interference or retaliation claims after allegedly requesting future, intermittent leave.

### C. FMLA Retaliation

Countryside next argues that the Court should dismiss Count Two of the Complaint. Deka asserts Count Two as a claim for retaliation in violation of the FMLA.

"Employers are also prohibited from retaliating against an employee that exercises or attempts to exercise FMLA rights." *Pagel*, 695 F.3d at 631, citing 29 U.S.C. §2615(a)(2). "[T]he employer cannot use an employee's use of FMLA leave as a negative factor in promotion, termination, and other employment decisions." *Id.*, citing *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008). To succeed on an FMLA-retaliation claim, a plaintiff must ultimately show: "(1) [s]he engaged in a protected activity; (2) [her] employer took an adverse employment action against [her]; and (3) there is a causal connection between the protected activity and the adverse employment action." *Id.*, citing *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009); *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014). A plaintiff may show the causal-nexus through either a direct admission from the employer or "circumstantial evidence of retaliatory intent." *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). Indeed, "[p]ieces of circumstantial evidence . . . may be combined to support an inference of discriminatory intent." *Id*. This circumstantial evidence can include, in part, "suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group[.]" *Id.*, citing *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014).

Here, Deka alleges that she sought and received approval for FMLA intermittent leave from Countryside in February 2012. Within a month, she alleges, Countryside terminated her employment before she used any leave. During the time before, during, and after her FMLA application process, Deka alleges that Countryside's directors made disparaging remarks

regarding FMLA leave, expressed financial complaints about various employees' serious health conditions, and dismissed fears of being caught discriminating given their line of business. The timing and statements alleged set forth sufficient facts to show that there is a causal connection between her protected activity and Countryside's adverse employment action. *See Twombly*, 550 U.S. at 556. Thus, Deka has alleged a plausible FMLA retaliation claim, and Countryside's motion to dismiss Count Two of the Complaint is denied.

### D. ERISA Interference

Countryside further argues that the Court should dismiss Count Three of the Complaint. Deka asserts Count Three as a claim for interference in violation of ERISA.

"ERISA §510 makes it 'unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant [in an employee benefits plan] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.'" *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014), quoting 29 U.S.C. §1140. "This provision prohibits retaliation for the exercise of plan benefits and interference with the attainment of those benefits." *Nauman v. Abbott Labs.*, 669 F.3d 854, 857 (7th Cir. 2012). Specifically, a plaintiff must eventually show that she: "(1) belongs to the protected class; (2) was qualified for [her] job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate or to prevent the use of benefits was present." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (citation omitted) (quotation marks omitted). In other words, "[t]he intent to frustrate the attainment of benefits must have been at least a motivating factor for the adverse action against the plan participant[.]" *Burlington*, 741 F.3d at 826.

Deka alleges that she participated in Countryside's long-term disability coverage and group health insurance plans during her five year tenure with the company. She further alleges that she was qualified for her position, identifying a number of occasions on which Countryside recognized and commended her for her contributions to the organization. Countryside learned about Deka's multiple sclerosis no later than February 27, 2012 when she submitted her FMLA leave application. On February 28, 2012, Deka alleges Countryside discontinued her health insurance and, on March 30, 2012, terminated her employment. Specifically, Deka asserts that Countryside terminated her employment "with the specific intent" of preventing her from using employment-related health insurance benefits. (R. 20 at 12, ¶96.) Further, Deka identifies a number of comments Countryside's directors made to her regarding the costliness of covering serious illnesses and their disapproval of FMLA leave. Based on these allegations, Deka has provided an ERISA framework supported by factual allegations that make it plausible Countryside's actions were "at least" motivated by an intent to frustrate Deka's attainment of benefits. *Burlington*, 741 F.3d at 826; *see also Iqbal*, 556 U.S. at 679. As a result, the Court denies Countryside's motion to dismiss Count Three of the Complaint.

### E. ADA Discrimination

Next, Countryside argues that the Court should dismiss Count Four of the Complaint. Deka asserts Count Four as a claim for discrimination in violation of the ADA.

"The ADA requires employers to make reasonable accommodations for a qualified individual with a disability." *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014). Moreover, the ADA "prohibits employers from 'discriminat[ing] against a qualified individual on the basis of [her] disability in regard to . . . discharge . . . and other terms, conditions, and privileges of employment.'" *Id*. at 488-89, quoting 42 U.S.C. §12112. For the

purposes of this provision, discrimination "includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of the business.'" *Shell v. Smith*, 789 F.3d 715, 716 (7th Cir. 2015), quoting 42 U.S.C. §12112(b)(5)(A). To prevail, a plaintiff must ultimately present evidence that: (1) she is a qualified individual with a disability as defined by the ADA; (2) the defendant employer was aware of her disability; and (3) the defendant employer failed to reasonably accommodate her disability. *See Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011).

In her Complaint, Deka alleges that while she was employed by Countryside, she suffered from multiple sclerosis and related physical and mental disabilities. She also alleges that Countryside was aware of her disabilities, as her FMLA leave application detailed her serious health condition to Countryside in February 2012. Further, Deka maintains that Countryside failed to reasonably accommodate the disabling effects of her multiple sclerosis by terminating her employment before she was able to utilize any FMLA intermittent leave. Based on these allegations, Deka has alleged sufficient facts to raise a reasonable inference that Countryside is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. As a result, the Court denies Countryside's motion to dismiss Deka's ADA claim as alleged in Count Four of the Complaint.

### F. ADA[3] Interference

Countryside next argues that the Court should dismiss Count Five of the Complaint. Deka asserts Count Five as a claim for interference in violation of the ADA.

The ADA makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having . . . exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. §12203(b). Although the Seventh Circuit has not delineated a test like in other employment statutes, the ADA's interference language is identical to the Fair Housing Act's (FHA) interference provision. *See* 42 U.S.C. §3617. At least one Court of Appeals has applied the FHA's interference standard to ADA interference claims. *See Brown v. City of Tuscon*, 336 F.3d 1181, 1191 (9th Cir. 2003) ("[S]imilarities between statutory provisions are an indication that Congress intended the provisions to be interpreted the same way[.]"), citing *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428, 93 S. Ct. 2201, 37 L. Ed. 2d 48 (1973). Accordingly, based on the FHA's interference standard, the plaintiff must eventually present the following to succeed in an ADA interference claim: (1) that she was engaged in protected activity or exercising her rights under the Act; (2) the defendant coerced, intimidated, threatened, or interfered with her on account of her having engaged in protected activity; and (3) that defendant intended to discriminate against her. *See Frakes v. Peoria Sch. Dist. No. 150*, No. 12-1329, 2015 WL 5050256, at *5-6 (C.D. Ill. Aug. 26, 2015) (referring to the FHA interference standard as the "proper framework to address an ADA interference claim," because "[t]he ADA interference provision copies verbatim the interference

---

[3] Specifically, Deka alleges "Retaliation and/or Interference in Violation of the ADA." (R. 20 at 14.) Given the alleged facts, the Court assesses this count as an "ADA interference" allegation only. Regarding retaliation claims, "[t]he ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination." *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012), citing 42 U.S.C. §12203(a). Deka's claim, however, does not assert that Countryside retaliated against her as a result of her discrimination claim. Rather, Deka alleges that Countryside interfered with her accommodation request protected by the ADA.

16

prohibition in the *Fair Housing Act*"); *see also Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (outlining the FHA interference standard).

Here, Deka alleges that she sought an accommodation from Countryside when she applied for FMLA intermittent leave on February 27, 2012. She also alleges that Countryside interfered with this accommodation by terminating her employment before she was able to use any of her intermittent leave. Similar to her FMLA and ERISA interference claims, Deka alleges a number of other facts such as Countryside's awareness of her disability, Countryside's relevant comments to her before, during, and after her accommodation requests, Countryside's termination of her health care and employment, and the short time frame between her accommodation request and termination. Thus, similar to the other interference claims, Deka's ADA interference assertion provides fair notice to Countryside. *See Twombly*, 550 U.S. at 555. The Court denies Countryside's motion to dismiss Count Five of the Complaint.

### G. Title VII Discrimination

Finally, Countryside argues that the Court should dismiss Count Six of the Complaint. Deka asserts Count Six as a claim for discrimination in violation of Title VII.

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'" *Bartholomew*, 799 F.3d at 815, quoting 42 U.S.C. §2000e-2(a)(1). "A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014), quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Indeed, "[t]he plaintiff is not required to include allegations . . . that would

establish a prima facie case of discrimination under the 'indirect' method of proof." *Id*. (citations omitted) (quotation marks omitted).  As "[e]mployers are familiar with discrimination claims and know how to investigate them . . . little information is required to put the employer on notice[.]"  *Id.*, citing *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007).

In her Complaint, Deka attributes her termination from her position of five years to sex discrimination, satisfying the *Carlson*, *Tamayo*, and *Concentra* pleading standard.  She also alleges that Countryside expressed an interest in hiring males, refused to terminate an employee because he was a male, and replaced her with a male employee subsequent to her termination. Viewing the allegations in the light most favorable to Deka, she has successfully alleged a plausible Title VII claim against Countryside.  Consequently, the Court denies Countryside's motion to dismiss Count Six of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Countryside's motion to dismiss.

DATED:  October 14, 2015

ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge